TOWN OF GLENWOOD SPRINGS v. GLENWOOD LIGHT & WATER CO.†

(Circuit Court of Appeals, Eighth Circuit. December 18, 1912.)

No. 3,705.

*(Syllabus by the Court.)*

1. WATERS AND WATER COURSES (§ 183*)—MUNICIPAL SUPPLY—FRANCHISES— GRANT—MUNICIPAL COMPETITION—INJUNCTION.

The exclusion of the grantor in a municipal or quasi municipal grant or contract from the right to compete with the grantee does not inhere in the grant or contract unless such exclusion is clearly stipulated therein, or is necessarily implied therefrom.

A town granted to a water company the right to construct and operate waterworks for a term of years to supply the town and its inhabitants with water for fire, domestic, and other purposes, the right to lay and maintain its pipes in the streets and alleys of the town for this purpose, and the exclusive right to furnish the town with water for public pur-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied February 26, 1913.

poses, such as the extinguishment of fires, the flushing of sewers and the sprinkling of the streets, and the town agreed to pay stipulated prices for the water for public purposes, to protect the company in its use of the streets, in the construction and use of its waterworks and in the collection of its water rates. The water company accepted this grant, executed the contract, and constructed and operated its waterworks.

*Held,* the grant and contract did not exclude the town from the right to construct and operate waterworks to supply its inhabitants with water for domestic and other purposes in competition with the company, and an injunction restraining it from so doing could not be sustained.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 277, 278; Dec. Dig. § 183.*]

2. SPECIFIC PERFORMANCE (§ 94*)—WATERS AND WATER COURSES (§ 183*)— RIGHT TO RELIEF—COMPLAINANT IN POSSESSION.

Courts of equity will not ordinarily compel the specific performance of a contract either by decree or by an injunction against its violation at the suit of a party who is guilty of a substantial breach of it.

In a contract for an extenson of the foregoing grant and agreement the town and the company agreed that the town might elect to purchase the waterworks of the company at any time during the extension, that in case of such election each party should appoint two arbitrators, and the four should, if they agreed, fix the reasonable value of the waterworks, which should be the price to be paid therefor by the town, and that, if the arbitrators failed to agree, they should appoint an umpire, whose award of the value of the waterworks should be final. The town elected to purchase, appointed two arbitrators, and requested the company to appoint two and to proceed to fix the valuation. The company failed to appoint arbitrators or to take any action for 11 months. Thereupon the town repealed the resolution signifying its election, and was about to issue bonds to purchase the waterworks at a price it specified, and, if the company failed to accept that price, to construct waterworks of its own, when the company filed its bill and applied for an injunction.

*Held,* these facts present no equity entitling the company to an injunction against the purchase of the waterworks by negotiation, or other lawful means dehors the contract, or against the construction or operation of waterworks by the town.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 249–256; Dec. Dig. § 94;* Waters and Water Courses, Cent. Dig. §§ 277, 278; Dec. Dig. § 183.*]

Appeal from the Circuit Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit by the Glenwood Light & Water Company against the Town of Glenwood Springs. Decree for complainant and defendant appeals. Reversed and remanded, with directions to dismiss.

John A. Rush, of Denver, Colo., for appellant.

George L. Nye, of Denver, Colo., and C. W. Darrow, of Glenwood Springs, Colo. (C. S. Thomas, W. H. Bryant, and W. P. Malburn, all of Denver, Colo., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. The decree which is challenged by this appeal enjoins the town of Glenwood Springs from incurring indebtedness, or issuing bonds to raise money to construct waterworks to supply its inhabitants with water, and from seeking to acquire or ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

quiring any part of the water system of the Glenwood Light & Water Company, except by paying a reasonable value for its waterworks system fixed by arbitrators in the way prescribed in the contract evidenced by an ordinance of the board of trustees of the town passed on February 14, 1905. The controlling question in the case is: May the town lawfully build and operate a waterworks system in competition with that of the company? The court below answered this question in the negative, and in effect enjoined the town from so doing. Counsel for the company contend that this conclusion was correct, and that this result was just and equitable, because, although the town had not granted to the company an exclusive franchise to furnish itself and its inhabitants with water, it had, by its contracts with the company, precluded itself from entering into competition with the company in that business, and because it had contracted with the company to purchase its waterworks at a reasonable valuation to be fixed by appraisers.

The company owns and operates a system of waterworks in the town under a contract evidenced by Ordinance No. 87 of September 28, 1887, whereby, until September 27, 1907, the right was granted by the town to the predecessors in interest of the company who accepted the ordinance to construct, maintain, and operate waterworks and to lay its pipes in the streets and avenues of the town, and under an ordinance adopted February 14, 1905, and accepted by the company, whereby the town extended until September 27, 1927, all the rights and privileges granted by the ordinance of September 28, 1887, and the company gave to the town the right to purchase its waterworks at any time during this extension at a reasonable valuation to be fixed by arbitrators. The facts upon which counsel for the company base their claim that the city is precluded from constructing and operating a system of waterworks to supply its inhabitants with water in competition with the system of the company are these: The contract of 1887 contained a grant by the city of a legal franchise to furnish water in the town for all purposes, for the purpose of supplying the town of Glenwood Springs and its inhabitants with water for fire, domestic and other purposes, a grant of the right to lay its mains and pipes in the streets and alleys of the town, a grant of an exclusive right to furnish the town with water from fire hydrants for fire purposes, flushing sewers and supplying water for sprinkling streets from sprinkling carts, an agreement that the town would not take water from hydrants or water for any public purpose furnished by any person or persons other than the grantees of the franchise, an agreement by the town to pay the grantees specified prices for the use of a certain number of fire hydrants and to protect by proper ordinances the grantees in their use of the streets, alleys, and public places of the town in the construction and use of their buildings, mains, pipes, and waterworks and in the collection of their water rates.

The argument is that by virtue of the provisions of the contract of 1887 which have been recited, and which by the extension agreement of 1905 remain in force until 1927, the city cannot, without the impairment of the obligation of its agreement, construct and operate waterworks of its own, and thereby compete with the company, that

its competition would be more effective than that of private parties and might be destructive, and that, as it has the power of taxation, it may compel the company to contribute toward the expense of the construction and operation of a town plant that might destroy its property. When, however, all is said and considered, the real question is, What is the contract between these parties? If the contract is that during its continuance the town will not construct and operate a system of waterworks in competition with that of the company then the construction and operation of such a system would work an impairment of the obligation of its agreement. If, on the other hand, the contract is limited to a grant of the franchise to construct and operate a system of waterworks to supply the town and its inhabitants with water, to a grant of the use of the streets and alleys for this purpose, and to an exclusive right to furnish to the town at fixed rates all the water it shall use during the life of the contract for public purposes, such as the extinguishment of fires, the flushing of sewers and the sprinkling of the streets, the construction and operation of waterworks by the town to supply its inhabitants with water would be neither a violation of its agreement nor an impairment of the obligation thereof. Counsel for the company concede that the contract is not exclusive; that notwithstanding its provisions the town may lawfully grant to third persons the right to build and operate waterworks to supply the inhabitants with water in competition with the system of the company. In the absence of an express and clear stipulation to that effect, and the contract contains none, it is difficult to conceive that the parties to this agreement intended to exclude the town when they did not exclude others. They inserted in the agreement a plain provision that the town would take and pay for water from the hydrants of the grantees and that it would not take water for public purposes from any other party. But they inserted no stipulation that the town would not construct and operate a system of waterworks to supply its inhabitants with water in competition with the system of the grantees and the logical inference is that they intended to make no such agreement.

[1] The exclusion of the grantor from the right to compete with the grantee does not inhere in a quasi municipal grant or contract unless it is clearly stipulated therein or necessarily implied therefrom, and in this grant it is neither and the town is not precluded thereby from constructing and operating a system of waterworks in competition with the company for the purpose of supplying its inhabitants with water. Joplin v. Southwest Missouri Light Co., 191 U. S. 150, 156, 158, 24 Sup. Ct. 43, 48 L. Ed. 127; Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 112, 114, 20 Sup. Ct. 40, 44 L. Ed. 92; Id., 186 U. S. 212, 22 Sup. Ct. 820, 46 L. Ed. 1132; Skaneateles Waterworks Co. v. Skaneateles, 184 U. S. 354, 363, 22 Sup. Ct. 400, 46 L. Ed. 585; Mayor, etc., of City of Meridian v. Farmers' Loan & Trust Co., 143 Fed. 67, 69, 71, 74 C. C. A. 221, 6 Ann. Cas. 599; Thomas v. Grand Junction, 13 Colo. App. 80, 56 Pac. 665.

Is the town precluded from constructing and operating waterworks because it has made a contract to purchase the system of waterworks.

of the company? The extension agreement of February 14, 1905, contained this stipulation:

"The town shall have the right to purchase the waterworks of the company at any time during the term of the extension or renewal herein provided for and at a valuation to be fixed by four arbitrators, two to be selected by the owners of said waterworks and two by the authorities of said town; but, should they fail to agree, such arbitrators to select an umpire whose decision shall be final as to the value of such waterworks, such value to be the reasonable value of said waterworks system at the time of the arbitration."

On August 3, 1908, the town adopted a resolution which recited the ordinances of September 28, 1887, and of February 14, 1905, and resolved that "believing it is for the general welfare, as well as the will of the people, that the town should purchase, own, operate and control the waterworks and water supply of the town, that immediate steps be taken for the fulfillment of such purpose by the appointment of two arbitrators who shall have full power to enter into negotiations with two arbitrators to be selected by the Glenwood Light & Water Company, for the purpose of determining and agreeing upon a value to be placed upon said waterworks, but should they fail to agree, such arbitrators to select an umpire whose decision shall be final as to the value of said waterworks, subject to the limitations prescribed by statute and the extension ordinance aforesaid," that a copy of the resolution be delivered to the company and a formal request made of it that the resolution be speedily complied with. On the same day the town appointed two arbitrators. On August 10, 1908, notice of the appointment of these arbitrators and a request that the company appoint its arbitrators was served upon the company, but the company neither protested the appointment of either of the arbitrators named by the town, nor appointed any on its own behalf, nor took any action toward the determination of the value of its waterworks or the performance of its part of the contract of sale thereof to the town. The excuses it now offers for its inaction are that one of the arbitrators appointed by the town had litigated with the company its right to the source of its water supply, that the action of the town in making the election should have been by ordinance, and not by resolution, and that the resolution was not passed for the purpose of effecting, and did not effect, an election by the town to purchase, but was enacted to ascertain what the town could purchase the waterworks for and to reserve its right to elect after that determination. On January 4, 1909, the town adopted a resolution which recited that the company had failed to select arbitrators, that immediate action be taken to determine in a legal way the valuation of the waterworks, and that the mayor be directed to employ counsel to commence the necessary legal proceeding and do the necessary acts to protect and enforce the rights of the town to the valuation and title of the waterworks of the company. Nine months more passed. But the company still failed to appoint arbitrators or to take any other action to perform its part of the contract of sale. Thereupon, on October 6, 1909, and more than 11 months after the town appointed its arbitrators and required the company to perform the contract of sale, the town by resolution in

terms repealed and rescinded the resolution notice and election to purchase of August, 1908, and on October 18, 1909, the town adopted an ordinance which in terms repealed the extension ordinance of February 14, 1905. In December, 1909, the town adopted an ordinance to create an indebtedness of the town and to issue its bonds for $125,-000 to raise money to purchase or to construct waterworks, to offer the company $60,000 in par value of the bonds for its waterworks, and, if it refused to sell for that sum, then to sell the bonds, and to use the money to construct a new system of waterworks of its own. The decree in this case enjoins the town from carrying into effect the provisions of this ordinance, or the provisions of the repealing ordinance of October 18, 1909. But, in view of the conclusion already reached that the original contract of the town and its extension did not preclude it from constructing and operating a system of waterworks in competition with that of the company, no equity entitling the company to this injunction is perceived in the facts which have been recited, whether or not the town elected and bound itself to purchase the waterworks of the company pursuant to the provisions of the extension ordinance of February 14, 1905.

Suppose that that ordinance is valid and that the town legally elected, and thereby irrevocably bound itself to purchase thereunder, the company has failed ever since August, 1908, when the notice and request were served upon it, to perform its part of this contract. It failed to do so for more than 11 months after the demand was made before the town attempted to withdraw from and to rescind the agreement of purchase. Nor has it yet offered or commenced to perform that contract. Its excuses for its failure are unsatisfactory. That an arbitrator was appointed by the town who had conducted a litigation against it did not relieve it from a performance of the contract on its part. A protest against his appointment or a suit might have removed him, and, if not, it was not he or any of the four arbitrators, but the umpire who was the final judge of the valuation of its property, and the company could undoubtedly have named two arbitrators who would not have consented to an unjust valuation or to the appointment of an unfair umpire. The other excuses it presents are that the resolution of election was illegal and ineffective because it was not an ordinance and because it was intended to and did not effect an election to purchase, and these excuses are excluded from consideration here by the supposition that there was a valid election. Under this supposition, before the election, the town had the right to elect to purchase the company's waterworks and the right to elect not to purchase them and to build waterworks of its own. In August, 1908, it elected to purchase the waterworks of the company, and demanded that the company should perform its part of the contract. The mutual agreements of the parties that upon the election each party should appoint two arbitrators who should, either themselves or through an umpire they should select, determine the value of the waterworks, were material covenants of the contract. The town performed its covenant in this regard. It appointed two arbitrators. The company failed to perform its covenant in this respect, though requested. It

did not appoint arbitrators and by this continuing failure it became guilty of the first breach of the contract. And courts of equity will not ordinarily compel the specific performance of a contract, either by decree or by an injunction against its violation, at the suit of a party who is guilty of a substantial breach of it. Shubert v. Woodward, 167 Fed. 47, 57, 92 C. C. A. 509, 519; Marble Co. v. Ripley, 10 Wall. 339, 358, 19 L. Ed. 955; Taussig v. Corbin, 142 Fed. 660, 667, 73 C. C. A. 656, 663.

[2] There is no equity here which entitles the complainant to an injunction against the acquisition of its waterworks by the town, by negotiation and purchase dehors the contract made by the election, or against its construction and operation of its own waterworks. Suppose, on the other hand, that the resolution of election was void or ineffective, then the town has the right to construct and operate its own waterworks without let or hindrance by the company, and there is no logical escape from the conclusion that there was no equitable ground for the injunction.

If it be said that in so far as the resolution of October 6, 1909, attempted to repeal the election resolution of August, 1908, and in so far as the ordinance of October 18, 1909, attempted to repeal the extension ordinance of 1909, they are void and the complainant is entitled to an injunction against their enforcement, the answer is that the evidence does not establish any restriction of or interference with the right of the company to furnish the inhabitants of the town with water, to use the streets, alleys, and public places for that purpose, to supply the town with all the water it may use for public purposes, and to be paid therefor by the town. Nor does it disclose any threat of any such restriction or interference, except that which may arise from the lawful construction and operation of waterworks by the town. If, in the future, any such unlawful restriction or interference, or the threat of it, shall arise, the powers of the courts of equity will be ample to enjoin it and to grant other just relief, and no estoppel of the company by this opinion or decision from securing all the relief to which subsequent events may entitle it can arise. The equity of the complainant, as the case now stands, however, does not support the injunction. The decree below must therefore be reversed, and the case must be remanded to the court below, with directions to dismiss the bill without prejudice to the right of the complainant to enforce, by suits in equity or actions at law, its right to furnish water to the inhabitants of the town, to use the streets and alleys of the town for that purpose, to supply the town itself with all the water it may use for public purposes, and to collect from it its rates therefor under the contract of 1887, and the extension of February 14, 1905.

It is so ordered.