### CONWAY et al. v. WHITE.

(Circuit Court of Appeals, Second Circuit. July 16, 1923.)

No. 271.

1. **Courts ☞347—Motion to dismiss bill must be heard as demurrer.**

A motion to dismiss a bill for want of equity, under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), must be heard and decided on the allegations of the bill as upon demurrer, and defendant may not, by filing his answer, move to dismiss on denials of the allegations of the bill, or on new matter set up in the answer.

2. **Specific performance ☞71—Contract to assign patent may be specifically enforced.**

A contract to assign a patent right will be specifically enforced.

3. **Patents ☞203—Trust to assign patent enforceable in equity.**

Where by the terms of his contract of employment inventions made by an employee are to be the property of his employer, the equitable ownership of patents granted to him, and applications therefor, is in the employer, and he holds the title thereto in trust, which trust may be enforced in a court of equity.

4. **Patents ☞203—Breach of contract by employer held not to terminate trust arising from contract for assignment of patent rights.**

Defendant was employed by a manufacturing company for a term of years as mechanical engineer; the contract providing that all inventions made by him during the term should be held by him in a fiduciary capacity and solely for the benefit of the company, and that he would, when required, execute all instruments in writing deemed necessary by the company to vest in it the entire right, title, and interest in such inven-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tions. At a time when the company was not in default it requested him to execute assignments of certain pending applications for patents which he refused to do. *Held*, that such refusal was a breach of the contract by him; that the subsequent bankruptcy of the company, which terminated the contract, did not terminate his trust, nor give him the right to appropriate the property which he held as trustee, and wrongfully withheld from the equitable owner and that the right to enforce the trust passed to the trustee of the company and to his assignee of the contract.

5. **Patents ⬤⟾195—Agreement by employee that inventions made by him shall be held in trust for employer is valid.**

An agreement that any inventions made by an employee during his employment, which are capable of use in the business of the employer, shall be held in a fiduciary capacity, solely for the benefit of the employer, is valid and enforceable.

6. **Patents ⬤⟾203—Suit may be maintained to enforce trust, arising from contract to assign patent rights, though there has been breach of the contract which created it.**

The complainant in a suit for specific performance of a contract must show performance, or ability, readiness, and willingness to perform all the provisions of the contract to be performed by him; but where a trust agreement in the contract has been fully executed, and defendant holds property thereunder as trustee, a suit to enforce performance of the trust may be maintained though the contract as to its other provisions has been terminated by default of the other party.

7. **Bankruptcy ⬤⟾143(10)—Trust in inventions held not affected by bankruptcy of cestui que trust.**

While bankruptcy of an employer may constitute a breach of contract of employment, which gives the employee a claim for damages against the estate, it gives him no right to convert to his own use inventions which under the contract he holds in trust for the employer, but trustee in bankruptcy of employer, under Bankruptcy Act, §§ 70b, 70c (Comp. St. § 9654), becomes vested with the bankrupt's title to the patent applications as of the date the employer was adjudged a bankrupt.

Appeal from the District Court of the United States for the District of Connecticut.

Suit in equity by Earle E. Conway and others, trustees, against Frank C. White. Decree for defendant, and complainants appeal. Reversed and remanded, with instructions.

The plaintiff, Earle E. Conway, is a citizen of the state of Massachusetts, Carl C. Conway is a citizen of the state of New York, and Theodore P. Brown is a citizen of the state of Massachusetts. They are trustees under a declaration of trust dated April 30, 1913. The defendant is a citizen of the state of Connecticut. This is a suit brought by the plaintiffs to compel the defendant to transfer to them certain patent rights now in the possession of the defendant, and for a discovery, accounting, and injunction with regard thereto.

It is alleged that on March 25, 1920, the defendant and the Wilcox & White Company, a Connecticut corporation, entered into an agreement whereby the defendant was to be employed by the company as mechanical engineer for a period of five years beginning on April 1, 1920. The salary to be paid him was to be $8,000 for the first year, and was to increase $1,000 a year for each year of subsequent employment. The parties to the agreement entered upon the performance of it, and this performance continued until about July 15, 1921, when the Wilcox & White Company became bankrupt; but prior to the bankruptcy, and while so employed by the company under the agreement, the defendant, it is alleged, made valuable inventions and discoveries which in one way or another affected articles manufactured by the said company,

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and which therefore pursuant to the aforesaid agreement, belonged absolutely and entirely to the company.

It is alleged that on or before April 1, 1921, the company, at the time not being in default under its contract, requested the defendant to execute assignments in writing proper and necessary to vest in the company the entire right, title, and interest in the discoveries and inventions before mentioned, and which were embodied in certain patent applications which had been filed thereon particularly serial Nos. 455,346 and 440,296, but that defendant refused to make the assignments, and thereby breached and defaulted on the contract while it was in full force and effect. It is alleged that the defendant still retains the title to the unassigned applications and that, unless the title to those applications and inventions are assigned to the plaintiffs, the latter will be irreparably damaged in the business that they are starting and commencing to carry on under the rights acquired by them from the sale in bankruptcy of the Wilcox & White Company's business.

As heretofore said, the Wilcox & White Company became bankrupt on July 15, 1921, and on May 13, 1922, the bankrupt's estate was sold to one Norman November who thereafter assigned to the plaintiffs his interest in the contract which the bankrupts had entered into with the defendant, and in all inventions, applications, and patent rights, together with the good will of the business.

The defendant in his answer set up the defense that the plaintiffs and their predecessors in interest, the Wilcox & White Company by its bankruptcy, had breached the contract with the defendant, and that this affected the whole consideration, so far as the defendant was concerned, and terminated each and every covenant thereof as effectively as if they had never been made. The defendant in his answer also alleged that the bill failed to allege any matter of equity entitling the plaintiffs to the relief prayed for therein, and that it did not contain facts sufficient to constitute a valid cause of action in equity, for the reason, among others, that it appears on the face of the bill that defendant has no mutual remedy to compel specific performance of the contract by the plaintiffs or by the Wilcox & White Company.

When the case came on to be heard, the plaintiffs moved to amend the bill of complaint and the motion was granted, and the bill amended. The foregoing statement as to what the bill contained is based on the bill as amended. The defendants then moved to dismiss the bill, both in its original and amended form, for the reasons already set forth in the answer; and the bill was thereupon dismissed for want of equity, a decree to that effect being entered, and an appeal to this court being taken.

Louis W. Southgate, of New York City (Robert C. Cooley, of Springfield, Mass., and O. Ellery Edwards, of New York City, of counsel), for appellants.

Mitchell Brothers, of New York City (George H. Mitchell and G. H. Brevillier, both of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). On the day set for the trial of this case in the court below the defendant moved to dismiss the bill. This motion was based on equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), which abolished demurrers and pleas and provided that every defense in point of law arising upon the face of the bill which might heretofore have been made by demurrer or plea "shall be made by motion to dismiss or in the answer." The plaintiffs had not set the case down for hearing upon bill and answer, but were ready to go ahead with proofs. The defendants' counsel, however, availed themselves of the equity rule quoted. The District Judge granted the motion to dismiss.

[1] Before proceeding to the consideration of the question involved we may point out that a motion to dismiss for want of equity must be heard and decided upon the allegations of the bill as upon demurrer. The defendant is not at liberty by filing his answer to move to dismiss upon denials of the allegations of the bill, or by new matter set up in his answer. A motion to dismiss the bill, because it does not state facts sufficient to constitute a cause of action, must be overruled, and the case allowed to go to hearing, unless it clearly appears upon the face of the bill that, taking the allegations to be true, they are insufficient to entitle the plaintiffs to the relief asked. Krouse v. Brevard, 249 Fed. 538, 548, 161 C. C. A. 464; Ralston Steel Car Co. v. National Dump Car Co. (D. C.) 222 Fed. 590. It is our opinion that this bill alleges facts which are sufficient, if true, to entitle the plaintiffs to the relief sought.

[2] The bill declares that "this is a suit brought by the plaintiffs for specific performance of a contract" between the defendant and the plaintiff's predecessor in interest. As a general rule specific performance is not decreed, where the subject-matter of the contract is personal property, inasmuch as the compensation which is recoverable in an action at law is ordinarily an adequate remedy for the breach of the contract. But it is well established that an agreement to assign a patent right will be specifically enforced. The reason for making such an exception to the general rule being that a patent is in its nature a unique thing which money compensation does not enable the plaintiff to duplicate.

[3] But this case is brought not merely to enforce a contract to assign a patent right. The facts alleged show that defendant is a trustee and holds the legal title to property the beneficial ownership of which is vested in another. The purpose of the bill is to compel the performance of a trust agreement in accordance with its terms. It seeks the transfer of the legal title in certain applications for patents which the defendant has held in trust from the time they were filed. The beneficial ownership was at the beginning in the Wilcox & White Company to whose rights therein the plaintiffs have succeeded. Where a trust has been created a court of equity does not permit the trustee to violate it by his wrongful acts, but compels him faithfully to perform according to his undertaking.

[4] This brings us more particularly to inquire as to the allegations of the bill. It alleges that defendant has certain property in his possession which he holds in a fiduciary capacity and solely for the benefit of the plaintiffs, which property he had agreed to transfer when required to do so. That he was required by the beneficial owner to make the transfer and has declined to execute the same. Whenever a person has a right to the beneficial enjoyment of property of which the legal title is in another a trust exists, which can be enforced in equity. The one entitled to the beneficial interest always has the right to compel in a court of equity a performance of the trust, which he has undertaken, according to its terms and intent. It is a maxim of equity, which has been adhered to from ancient times, that a trustee can derive no advantage from his trust. But the trustee in this case is in court, claim-

ing that his trust is at an end, and that he is entitled to hold the property for himself alone.

The bill sets forth the agreement which the defendant entered into with the plaintiffs' predecessors in interest, the Wilcox & White Company, on March 25, 1920. That agreement contained among other provisions the following:

"Third. The party of the first part is engaged in the manufacture of player pianos, reproducing pianos, and mechanical devices in connection therewith and with musical instruments generally, and in the manufacture of music rolls and other appurtenances used with such pianos and musical instruments, and that said manufacture is carried on by means of certain patents, secret methods, processes, tools, machinery, devices and appliances and the same are the property of the party of the first part and intended to be kept secret, and all knowledge and information which the party of the second part (the defendant) now possesses or shall hereafter acquire respecting said secrets, and all inventions and discoveries made by the party of the second part during the term of his employment shall at all times and for all purposes be regarded as acquired and held by the party of the second part in a fiduciary capacity and solely for the benefit of the party of the first part.

"Fourth. The party of the second part agrees that he will, when required, make and execute any and all instruments in writing that may be deemed by the party of the first part proper and necessary, to transact and vest in the party of the first part the entire right, title, and interest in all inventions and discoveries made by the party of the second part, during the term of his employment, which in any way may effect any articles manufactured by the party of the second part and used or capable of being used in the business of the party of the first part."

The bill alleges that the defendant, during his employment by the Wilcox & White Company under this contract, made application for certain letters patent of the United States for an invention, being serial No. 440,296, application for which was filed on January 27, 1921. That application was for a transposing mechanism. The complaint alleges that defendant also made application for a patent for a drawer construction. That application was filed on March 24, 1921, and is serial No. 455,346. The defendant in his answer alleges as to the application for this particular patent that the essential and material parts of that invention were discovered and completed by him prior to the commencement of the term of his employment under the contract. If the defendant proves his allegation at the trial he has a good defense as to that particular application; but upon the question now before the court the defendant's allegation cannot be for any purpose considered.

The plaintiffs in their complaint allege that defendant, pursuant to his agreement, has assigned to the Wilcox & White Company two other applications made by him for letters patent, namely, serial Nos. 467,615 and 471,829. The first of the applications was filed on May 7, 1921, and was for motor suspension. The second was filed on May 23, 1921, and was for extensive conduit. In making these assignments the defendant has to that extent performed according to his trust.

It appears from the bill that the defendant entered into the service of the Wilcox & White Company as its mechanical engineer on April 1, 1920, and that he agreed to devote his entire time and attention to the company's business during the period of employment which was for five years; that he agreed to maintain secrecy as to the company's meth-

ods and devices, its plants, patents, etc.; that he agreed that all inventions and discoveries made by him during the term of his employment should "at all times and for all purposes be regarded as acquired and held" by him "in a fiduciary capacity and solely for the benefit" of the company; that he further agreed that he would, "when required," execute any written instrument deemed proper and necessary by the company to transfer and vest in it "the entire right, title and interest" in any inventions and discoveries during the term of his employment which might be capable of use in the company's business; that he was paid his salary in full down to April 1, 1921; that on or before the date last named and prior to the bankruptcy the company, not being then in default under its contract, requested the defendant to execute assignments deemed necessary to vest in it the entire right, title, and interest in the patent applications which he had filed during the period of his employment, and for discoveries and inventions which he had made during his employment, and which were capable of being used in the company's business; and that the defendant has refused to do as requested.

The bill discloses that, some time subsequent to this request to defendant to assign the patents over to the Wilcox & White Company, the company was thrown into bankruptcy and pursuant to its own admission of insolvency and due proceedings had upon the petition of three creditors; that the estate of the bankrupt passed to a trustee in bankruptcy; that he put the estate up at auction and it was sold to the highest bidder, one Norman November, who paid the purchase price for the same; that thereafter November assigned to the plaintiffs as trustees all his right, title, and interest in the contract made between the Wilcox & White Company and the defendant, and in and to all said inventions, applications, patents, patent rights, etc.

[5] The agreement that any inventions and discoveries made by the defendant during his employment and which were capable of use in the business of the company should be regarded as acquired and held in a fiduciary capacity and solely for the benefit of the company was a valid obligation, and was made to safeguard the particular business in which the defendant was employed. The decision of this court in Chadeloid Chemical Co. v. H. B. Chalmers Co., 243 Fed. 606, 156 C. C. A. 304, is conclusive as to the validity of the agreement. See, also, Detroit Lubricator Co. v. Lavigne, 151 Mich. 650, 115 N. W. 988; Mississippi Glass Co. v. Franzen, 143 Fed. 501, 74 C. C. A. 135, 6 Ann. Cas. 707; Hulse v. Bonsack Machine Co., 65 Fed. 864, 13 C. C. A. 180; 1 Robinson on Patents, § 414.

In Wege v. Safe Cabinet Co., 249 Fed. 696, 161 C. C. A. 606, the Circuit Court of Appeals for the Sixth Circuit, not only sustained the validity of an agreement obligating an inventor to treat all inventions and patents applicable to a particular art as the property of his employer and specifically enforceable, but held that it also obligated the employee to assign a patent for an invention made after the employment was terminated; the contract not being limited in terms to inventions made during the period of employment. In Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369, and in Dalzell

v. Dueber Watch Case Manufacturing Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749, it was held that a manufacturing company could not compel an employee to transfer to it patents obtained by him while so employed, in the absence of an express agreement to that effect. There is nothing in either of those cases which militates against the conclusion which we have reached in this.

Assuming, as we must, that the allegations of the bill are true, there is no escape from the conclusion that at the time when the inventions were made the equitable title and beneficial interest therein vested at once absolutely in the Wilcox & White Company, and that whatever legal title the defendant possessed therein he held solely as trustee, and if there had been no agreement to transfer the title to the property over to the Wilcox & White Company the court would have implied such an agreement and compelled compliance with it. Wege v. Safe Cabinet Co., 249 Fed. 696, 705, 161 C. C. A. 606. But in this case, as has been seen, the defendant expressly agreed that whenever "required" he would execute any instruments in writing that might be deemed by the Wilcox & White Company proper and necessary to transfer and vest in it "the entire right, title, and interest" in such inventions and discoveries; and prior to any breach of the contract by the Wilcox & White Company, and while the defendant was still employed by it and being paid regularly his salary in accordance therewith, he was requested by the company to make the assignments necessary to transfer to it the right, title, and interest he had in the inventions and he refused to comply. If, as alleged, he so refused he committed a breach of the agreement. This breach on his part antedated the breach which the Wilcox & White Company committed by their subsequent bankruptcy.

Whether this agreement to transfer is a vital or a subsidiary term in the contract, and whether defendant's failure to perform operated to discharge the company from its obligations under the contract, is a question which we need not now consider; for, whatever may be the legal right, title, or interest the defendant had in the inventions involved, it is indisputable that he held the same simply as trustee for the Wilcox & White Company, or its creditors. The subsequent bankruptcy of the Wilcox & White Company could not, in our opinion, terminate the trust already in existence, and could not enable him to convert the trust property to his own personal use. At the time the bankruptcy occurred the defendant was in possession of this property only by virtue of his prior breach of the trust agreement. This breach of trust, wrongful when committed, is not justified or excused by the subsequent bankruptcy of the cestui que trustent. If the bankruptcy of Wilcox & White operated to divest that company of its right, title, and interest in the invention their rights passed to the creditors of the company and not to this defendant, who has continued throughout to hold in his character as trustee.

We think that it is not open to question in the federal courts that the bankruptcy of a party to an executory contract operates to discharge it. In Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 591, 36 Sup. Ct. 412, 415 (60 L. Ed. 811, L. R. A. 1917B, 580), Mr. Justice Pitney, speaking for the court, said:

"In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance."

And it was concluded that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement. Conceding that the trustee in bankruptcy had a right to elect to assume performance of the contract, he did not elect to assume it, "and so the matter is left as if the law had conferred no such election." In accordance with the law as thus laid down, it is admitted that the bankruptcy of the Wilcox & White Company amounted to a breach of its contract with the defendant.

Assuming that the subsequent bankruptcy of the Wilcox & White Company was a breach of the contract which discharged the defendant therefrom, it will hardly be contended that it thereby relieved him from the obligation he had assumed not to disclose the secret methods and processes of that company's business; and in the same way in our opinion it did not enable him to repudiate the trust he had assumed as to inventions and discoveries he made while employed under his contract, and which related to and affected the business of the company. It is fair to assume that the knowledge he derived from his employment of the secret processes and methods used by the company in its business materially aided him in the inventions he made, and afford an explanation of his reasons for agreeing that he would hold them in a fiduciary capacity and solely for the company's benefit. It seems to us that he was no more at liberty, after the bankruptcy occurred, to repudiate that part of his agreement than he was to divulge the secrets of the employer's business.

[6] The rule is well established and fundamental that, in a suit to compel the specific performance of a contract, the complainant cannot succeed, unless he can show that he has himself performed or offered to perform, or is then ready and willing to do all and such essential and material acts as shall be required of him in the specific execution of the agreement according to its terms. He must not only show that he has complied with the provisions of the contract in respect to what ought to have been done by him, but that he is ready and willing to comply with the provisions in respect to what he will be required to do in the future. Pomeroy on Specific Performance (2d Ed.) § 323. The plaintiff must show performance, or ability, readiness, and willingness to perform all the provisions of the contract to be performed by him; and relief is denied to a plaintiff who is unable to perform his part of the contract. Marble Co. v. Ripley, 10 Wall. 339, 358, 19 L. Ed. 955; Ellis v. Treat, 236 Fed. 120, 149 C. C. A. 330; Town of Glenwood Springs v. Glenwood Light & Water Co., 202 Fed. 678, 684, 121 C. C. A. 88, L. R. A. 1915C, 438; Land Company v. Moody, 198 Fed. 7, 119 C. C. A. 135; Shubert v. Woodward, 167 Fed. 47, 57, 92 C. C. A. 509; Taussig v. Corbin, 142 Fed. 660, 667, 73 C. C. A. 656; Slaughter v. LeCompagnie Francaise Des Cables Telegraphiques (C. C.) 113 Fed. 21, affirmed 119 Fed. 588, 57 C. C. A. 19; Leicester Piano Co. v. Front Royal, etc., Imp. Co., 55 Fed. 190, 5 C.

C. A. 60. Judge Story, in his work on Equity Jurisprudence (volume 2, § 736), states the doctrine as follows:

"In cases of covenants and other contracts, where a specific performance is sought, it is often material to consider how far the reciprocal obligations of the party seeking the relief have been fairly and fully performed; for if the latter have been disregarded, or they are incapable of being substantially performed on the part of the party, so seeking relief, or from their nature they have ceased to have any just application by subsequent events, or it is against public policy to enforce them, courts of equity will not interfere."

Counsel for the defendant rely upon the rule that in a suit to compel the specific performance of a contract the complainant cannot succeed, unless he can show that he has himself performed or offered to perform his own obligations under the contract. That rule is here unchallenged. It is without application to the facts of this case. The plaintiffs are not seeking the specific performance of an agreement to establish a trust. It is not claimed that the execution of any further instruments are necessary to complete the trust. The contract itself completely defined the estate and interest in the subject-matter of the trust which is an executed and not an executory trust. It came into existence at the very time the inventions were made—the defendant having by his contract agreed that the property therein "shall at all times and for all purposes be regarded as acquired and held" by him "in a fiduciary capacity and solely for the benefit of the" Wilcox & White Company, the plaintiff's predecessor in title.

A difference exists between a contract and a trust. They are not one and the same thing. Thus in Lewin on Trusts (11th Ed.) c. 6, p. 68, it is said:

"Where there is valuable consideration, and a trust is intended to be created, formalities are of minor importance, since, if the transaction cannot take effect by way of trust executed, it may be enforced by a court of equity as a contract."

If in the instant case the trust had not been already created, and the plaintiffs were in court asking that the agreement between the Wilcox & White Company and the defendant be specifically enforced as a contract to create a trust, there can be no question but that the attempt would fail and the bill would be dismissed. That, however, is not this case. Here the trust is an executed and not an executory trust. No further instruments need to be executed to establish and create it. The defendant agreed that all inventions and discoveries made by him during his employment "shall at all times and for purposes be regarded as required and held" by him in a fiduciary capacity. This made him a trustee of any such inventions and discoveries as soon as he made them; and where a trust has been perfectly created the courts enforce it, whether or not in its inception it was supported by a valuable consideration.

A court of equity will no more enforce a voluntary executory agreement to create a trust when made without consideration than it will perfect an imperfect gift. But, if nothing further remains to be done to establish the trust, the agreement will be enforced, although there was no consideration to support it. Janes v. Falk, 50 N. J. Eq. 468,

26 Atl. 138, 35 Am. St. Rep. 783. And, notwithstanding the absence of a consideration, a voluntary trust once validly created cannot thereafter be revoked. But in the instant case the defendant is not a trustee of a voluntary trust. The trust was based upon a valuable consideration which has in part failed. Does this partial failure of consideration justify the defendant in his refusal to transfer the patents in accordance with his agreement? We feel obliged to hold that, inasmuch as the Wilcox & White Company was not in default under the contract when the defendant made the inventions in suit, was not in default when the defendant made his applications for the patents, and was not in default when the company required him to execute the papers necessary to transfer and vest in it the entire right, title, and interest in the inventions in suit, it was then the owner of those inventions in equity being possessed of vested rights therein.

[7]. The subsequent bankruptcy of the company did not terminate the trust relation, or release the trustee from his obligations to hold in trust for the Wilcox & White Company or its creditors. The discharge of the contract through the bankruptcy of the Wilcox & White Company may entitle the defendant to a claim against the estate; but it does not entitle him to satisfy that claim by converting to his own use property which is in his hands as trustee, even though he holds it as trustee for the bankrupt.

The trustee of the estate of the bankrupt, Wilcox & White Company, became vested by operation of law with the title of the bankrupt to the patent applications as of the date it was adjudged a bankrupt. Act July 1, 1898, c. 541, § 70a (Comp. St. § 9654); In re Cantelo Manufacturing Co. (D. C.) 201 Fed. 158. As the Bankruptcy Act invested the bankrupt's estate with whatever interest the bankrupt possessed in patents or applications for patents, and empowered such trustee to sell the same subject to the approval of the court (sections 70b and 70c), it cannot be denied that the trustee's rights became vested in the plaintiffs herein, and that the plaintiffs have the same right to enforce the trust against this defendant that the trustee himself possessed.

The decree is reversed, and the case remanded, with directions to reinstate the bill and proceed to the trial of the issues.