## CITY OF VILLISCA, IOWA, et al. v. IOWA SERVICE CO.

(Circuit Court of Appeals, Eighth Circuit. June 4, 1925.)

No. 6741.

Electricity ⬳1½ — Iowa statute authorizing cities to condemn electric plants held permissive, and not mandatory.

Code Supp. Iowa 1913, § 722, providing that any city voting to construct gasworks, or heating or electric power plant, may condemn privately owned plant, or portion thereof, existing in city, franchise to operate which has expired, if owner and city cannot agree on terms of purchase, is permissive, and not mandatory, and decision of city officials to construct electric plant, and refusal to buy wiring of company furnishing current in city was conclusive.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Suit by the Iowa Service Company against the City of Villisca, Iowa, and oth-

ers. Decree for plaintiff, and defendants appeal. Reversed.

George L. De Lacy, of Omaha, Neb. (W. C. Radcliff, of Red Oak, Iowa, and Clem F. Kimball, of Council Bluffs, Iowa, on the brief), for appellants.

Emmet Tinley, of Council Bluffs, Iowa (Tinley, Mitchell, Ross & Mitchell, of Council Bluffs, Iowa, and George A. Lee, of Omaha, Neb., on the brief), for appellee.

Before SANBORN and LEWIS, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge. This appeal brings up for review an order of the trial court restraining the city of Villisca, Iowa (hereinafter referred to as the "city"), and its officials, its mayor and common council, from proceeding to construct within the city an electric lighting system municipally owned. The facts are:

The Iowa Service Company (hereinafter called the "Service Company") is what is known as an electric power company having its principal plant located in the city of Red Oak, Iowa, and furnishing electric current for lighting and other purposes to many cities and bodies corporate, and others, in that section of the state by means of transmission lines. The Service Company many years ago, by ordinance, contracted with the city to furnish it and its inhabitants electric current for lighting and other purposes for a period of 25 years. This contract, however, by its terms had expired in the year 1912, and no new contract between the parties has been made, or franchise granted to it. The Service Company does not own any electric generating plant in the city, but has merely furnished electric current from its Red Oak plant by means of electric wiring within the city.

In the year 1923 the city determined to construct its own generating plant and transmission system within the city under ample statutory power granted it by the state. In pursuance of such power a petition for an election was filed and a vote of the electors of the city was duly taken, voting bonds to construct the municipal plant desired by the city, and as by law required the city duly advertised it would offer for sale on a day certain its bonds to raise a fund sufficient to construct the plant. At this juncture the Service Company brought an action in the state court to enjoin the sale of the bonds by the city. It appears this suit still pends undetermined. Thereafter this suit was brought in the federal court. The bill for injunction on which the order sought to be reviewed rests appears to concede the entire legality of the proceedings taken by the city and its officials to acquire an electric lighting plant and system under the statute law of the state. But the bill further asserts, as the Service Company had within the city a system of electric wiring that may be employed by the city in transmitting the current from its plant to the inhabitants of the city, if the city is not restrained from building its own system of furnishing the current from its generating plant, the system of the Service Company will be rendered useless and destroyed; further, that it will be economy on the part of the city to purchase the part of a system desired by the city from the Service Company, rather than to construct a new system; and further, that the statutory power under which the city is proceeding, rightly construed, requires and commands the city to condemn the distributing system of the Service Company within the city, and that until this is done the city is without power to construct a new distributing system.

Under this bill of complaint, and over the protest of the city and its officials, a temporary injunction was issued, enjoining the city from proceeding further to acquire a new plant, and a commissioner was appointed by the court to take the proof offered by the respective parties, "especially with reference to the question of public interest involved," and such appointment was made. From this order this appeal is taken.

The contention of the Service Company that the city should be enjoined from erecting a new transmission system in competition with its system, for that to so do would destroy the value of its plant, has often been held no ground for staying the hands of a city, acting in pursuance of statutory power in the construction of public utilities, even in cases wherein the complainant, seeking to restrain the erection of the new plant, had an existing franchise and contract under which it was performing the service; whereas, in this case, all contractual rights and franchise relations between the Service Company and the city had expired more than 10 years before, and for all this time the Service Company had occupied the streets and performed a public service at the mere will or sufferance of the city. See Town of Glenwood Springs v. Glenwood Light & W. Co., 202 F. 678, 121 C. C. A. 88, L. R. A. 1915C, 438; Madera Waterworks v. Madera, 228 U. S. 454, 33 S. Ct. 571, 57 L. Ed.

915; Water Co. v. Knoxville, 200 U. S. 35, 26 S. Ct. 224, 50 L. Ed. 353.

The principal contention in support of the order challenged here is that the statute law of the state commands the city, acting thereunder in the procuring of a municipal light plant, in which city there at the time exists all or a part of such plant or system already constructed, privately owned, but the franchise to operate same having expired, to acquire the same by condemnation proceedings, and to not proceed to the construction of a new plant. This contention is based on the language employed in section 722 of the Code Supplement of Iowa of 1913, which, among other things, provides, as follows:

"When any such city or town shall have voted to contract indebtedness and issue bonds as is provided in sections thirteen hundred and six-b, thirteen hundred and six-c, thirteen hundred and six-d, and thirteen hundred and six-e of the Supplement to the Code, 1907, for any of the purposes therein enumerated, and in such city or town there shall then exist any such heating plant, waterworks, gasworks, electric light or electric power plants, or incomplete parts thereof or more than one, not publicly owned, and the contract or franchise of the owner of which utility has expired or been surrendered and such owner and city or town cannot agree upon terms of purchase, such city or town may, by resolution, proceed to acquire by condemnation, as hereinafter provided, any one or more of such heating plants, waterworks, gasworks, electric light or electric power plants or incomplete parts thereof and when so acquired may apply the proceeds of the bonds voted or issued in payment therefor and in making extensions and improvements to such works or plants so acquired."

Now the facts on which the exercise of the power here granted the city might be exercised by the city undoubtedly exist, for that the Service Company had a part of an electric plant in the city and its franchise to operate the same had expired, and undoubtedly, had the city so desired, it might have condemned and taken over that part of the plant privately owned by the Service Company within the city. However, the city, as shown by the record, did not so desire, but, on the contrary, refused to so do. The Service Company insists this language in this statute, rightly construed, is mandatory and must be so held. On the contrary, it is the contention of the city the language

employed by the law-making power above quoted is merely permissive, and rests on the will or option of the city.

A consideration of the language employed leaves no room whatever for doubt but that, as it is ordinarily construed, it is not mandatory ·in character and meaning, but is, as contended by the city, permissive merely, and the power to exercise the privilege or to not exercise it rests entirely in the judgment and discretion of the city officials, and their decision is final and conclusive. From a reading and' consideration of the entire act we have no doubt whatever the law-making power of the state, in providing the power conferred on the city, made it permissive on the part of the city, and not mandatory in form, and that the law-making power meant precisely what the language says; that is, it is merely permissive on the part of the city, and is not mandatory. As tending to support this construction, if, indeed, the citation of authorities in its support does not tend to show a lack of confidence in a self-evident proposition, the reasoning of Mr. Justice Peckham in Waterworks Co. v. Skaneateles, 184 U. S. 354, 22 S. Ct. 400, 46 L. Ed. 585, City of Helena v. Helena Water Works Co., 195 U. S. 383, 25 S. Ct. 40, 49 L. Ed. 245, Helena Consolidated Water Co. v. Steele, 20 Mont. 1, 49 P. 382, 37 L. R. A. 412, and many other cases may be consulted.

It follows the injunctive order granted in this case is erroneous, and must be reversed.