ANTONIO MELIAN PAVIA, Plaintiff, *v.* PARK-LEXINGTON CORPORATION, Defendant.

Supreme Court, New York County, October, 1930.

*S. J. Rosensohn*, for the plaintiff.

*Lewis, Garvin & Kelsey* [*E. T. Murdoch* of counsel], for the defendant.

COTILLO, J. This action was tried before me without a jury, the parties giving the usual stipulation waiving findings and for a directed verdict as though a jury was present. Plaintiff seeks to recover upon a promissory note dated January 4, 1926, made and executed by defendant to the order of Joseph L. Greenberg in the sum of $100,000, payable September 1, 1927, and indorsed in blank by the payee without recourse. The parties agree that the note was actually made on January 4, 1927, the date affixed being a clerical error. The making of the note is admitted, as well as its transfer on January 5, 1927, to the Trust Company of North America, and by that bank to the trustees in bankruptcy of one Robert M. Catts and of a corporation known as Merchants and Manufacturers Exchange of New York. Pursuant to an order made by the Federal court, in a proceeding to which defendant was not technically a party, the trustees transferred the note to plaintiff who thereupon instituted this action thereon.

The defense interposed is that the note was delivered conditionally and the prescribed conditions have not been met. The facts in this case are somewhat involved, having been complicated by bankruptcy proceedings and by two agreements, as to one of which neither plaintiff nor defendant was a party, and as to both of which defendant was not a party.

The facts as claimed by both parties embrace the following salient features: A long and valuable leasehold on the square block between Lexington and Park avenues, Forty-fifth to Forty-sixth streets, was owned by the defendant corporation. Through stock ownership of a third corporation, the R. M. Catts Corporation owned all the stock of the defendant and thus virtually owned or controlled the leasehold. The R. M. Catts Corporation had been formed to take over the leasehold from one Catts and/or the Merchants, etc., Exchange. The R. M. Catts Corporation, after entering into a contract of purchase and paying a very substantial

deposit, found that the leasehold or the stock of the corporations holding it, were subject to large liens for loans or advances made by various persons. It was obliged to purchase some outstanding stock to protect its deposit under the contract and thus acquire full control of the leasehold. The Merchants, etc., Exchange thereupon brought suit to set aside the acquisition of stock by the R. M. Catts Corporation. In that and kindred litigation one Joseph L. Greenberg was the attorney for Catts and/or the Merchants, etc., Exchange. During the course of the litigation, Greenberg approached R. M. Catts Corporation with the proposition of a sale of the leasehold to his clients to enable them to make a resale to this plaintiff, thereby working out a solution of the problems then in controversy. Defendant contends that Catts Corporation flatly refused to enter into any contract with Catts or the Merchants, etc., Exchange owing to the alleged deceit practiced upon it resulting in the then existing litigation. It is defendant's contention that Greenberg than asked if the Catts Corporation would enter into a contract to sell to Greenberg personally, and that Catts Corporation agreed so to do only upon the express understanding that Greenberg was acting individually and not on behalf of Catts or the Merchants, etc., Exchange.

On January 5, 1927, the Catts Corporation entered into a written contract, under seal, whereby it agreed to sell the Park-Lexington Corporation stock to Greenberg for $10,050,000. On the same day Greenberg contracted in writing with plaintiff to sell to the latter the leasehold for the sum of $10,600,000. Under the terms of that agreement, plaintiff paid $100,000 in cash upon the signing thereof, which he voluntarily increased to $125,000 shortly after execution of the contract, and bound himself to pay $250,000 on April 15, 1927, $150,000 on June 1, and $250,000 on August 1, 1927, later modified by fixing September 15, 1927, as the date of final cash payment. Balance of the purchase price was made up of existing mortgages, the discharge by plaintiff of certain deferred payments by means of a stock issue, and by certain indentures to be delivered on the closing. The agreement required Greenberg to deposit with the Trust Company of North America, as security for his performance of the contract, 32,834.57 shares of the stock of the Merchants, etc., Exchange (the entire issue being less than 35,000 shares) and also required the deposit with the trust company by Greenberg " as additional security a promissory note drawn in favor of the Seller (Greenberg) by Park-Lexington Corporation in the sum of One Hundred Thousand Dollars ($100,000). Said stock and note shall be returned to the Seller upon the closing of title hereunder or in case of a default

on the part of the Purchaser (plaintiff) as in Paragraph Thirteenth provided, or upon any default of Purchaser."

The contract between Greenberg and plaintiff was made a part of the contract between Greenberg and the Catts Corporation, and a copy annexed thereto. By the latter contract Catts Corporation agreed, not only to sell to Greenberg all the Park-Lexington Corporation stock, and thus enable Greenberg to perform his contract with plaintiff for the sale of the leasehold, but also to deliver to the Trust Company of North America a note of the Park-Lexington Corporation, payable September 1, 1927, for the sum of $100,000. The agreement provides that Greenberg shall, upon the execution thereof, deliver to the Park-Lexington Corporation $185,000 in cash, " of which $100,000 is covered by the note in paragraph ' Third ' (the note here in suit) and $85,000 to be advanced by Spear & Company for account of #247 Park Avenue to be repaid out of surplus rents." Greenberg obligated himself to pay, in all, $200,000 of the purchase price in cash on or before April 15, 1927, on which date plaintiff, under his agreement with Greenberg, was to pay a second installment of $250,000. The agreement between Greenberg and Catts Corporation provided that if plaintiff defaulted under his contract with Greenberg, the notes should be canceled and Catts Corporation should not be obligated to repay any portion of the $200,000 that it may have received. The $100,000 paid by plaintiff to Greenberg was received by the defendant herein at or about the time the note in suit was given.

On February 2, 1927, Catts and the Merchants, etc., Exchange went into bankruptcy. Greenberg immediately announced that in contracting with plaintiff on the one hand and with defendant on the other, he was acting as the agent and solely for the benefit of these two bankrupts. He followed that declaration by assigning to the separate trustees in bankruptcy all his rights under said contracts. The trustees did not give notice of election to assume such contracts. The proof indicates that they regarded the contracts as a liability rather than an asset. Greenberg put it out of his power to perform by his declaration and assignment.

Plaintiff was notified of the bankruptcy and of Greenberg's position. He had no choice but to pursue his remedy, if any, against Greenberg's assignees, and consequently filed a claim for the $125,000 paid by him under his contract of purchase, alleging a default by Catts (the individual) and the Merchants, etc., Exchange, and asserting that his claim was secured to the extent of the $100,000 note made by the Park-Lexington Corporation. His claim was objected to by the trustees of the two bankrupt

estates, who in turn instituted a proceeding to recover the note on behalf of the bankrupts under Greenberg's assignment, alleging that plaintiff breached his contract with Greenberg. Plaintiff by his answer asserted that Greenberg and the trustees were in default by reason of their inability to perform. The referee in bankruptcy held that plaintiff was not guilty of any breach of his contract, but that the bankruptcies of the Merchants, etc., Exchange and of Catts had terminated the contract, inasmuch as the trustees had not elected to perform thereunder. The referee held that at the time of the bankruptcy, neither side was in default. His decision, allowing plaintiff's claim and awarding possession of the note to plaintiff, was confirmed by the District Court, whose decision in turn was affirmed by the Circuit Court of Appeals.

Plaintiff asserts that the Federal decision is *res adjudicata* here. Technically speaking, this defendant was not before the Federal court, although Catts Corporation, the owner of all defendant's capital stock, was before that court asserting its right to the return of the note, which it, and not this defendant, had delivered to the trust company for Greenberg's account. While that court may have decreed that plaintiff was entitled to possession of the note as against the Catts Corporation, the trustees and Greenberg, it does not appear that it necessarily or properly could have decreed that the maker of the note, not a party to the proceeding, had no defenses thereto. In view of these grave doubts as to the soundness of the plea of *res adjudicata*, I prefer to base my decision on broader grounds, and hence have examined the facts independently, although affording due respect to the Federal courts' opinions.

Under plaintiff's contract with Greenberg, the note was to be returned to the latter (1) on the closing of title, or (2) in case of plaintiff's default. Under Greenberg's contract with Catts Corporation, the latter agreed to deliver the defendant's promissory note so that Greenberg could carry out his agreement with plaintiff to deposit it as security for the latter's protection. Defendant was a party to neither contract. The agreement between Catts Corporation and Greenberg provided that the note was to be canceled if plaintiff defaulted under his contract with Greenberg. Thus, the note, duly made, was delivered, subject to but *two* conditions. The first refers to the closing of a contract which was admittedly never closed. The second is based solely on a default by plaintiff. Neither defendant nor any one purporting to act on defendant's behalf, protected it or themselves against any other contingency which might have arisen. We have only to inquire, then, did plaintiff default under his contract with Greenberg?

The first act required of plaintiff after the execution of the con-

tract and payment of the initial cash installment of $100,000 was a second payment on April fifteenth, of $250,000. On February second, less than a month from the date of the contracts, Catts and the Merchants, etc., Exchange went into bankruptcy and Greenberg notified plaintiff that these two bankrupts were the real principals in the transaction. This was followed by Greenberg's assignment of his interest in the contract to the trustees. It is obvious that plaintiff was not in default at this time. He had even made a cash payment of $25,000 more than required by his written contract. He certainly was under no obligation thereafter to make any payment or tender to Greenberg, who had rendered himself incapable of performing. Defendant contends that Greenberg had, by his representations, made to induce Catts Corporation to contract with him, estopped himself from asserting that Catts (the individual) and the Merchants, etc., Exchange were the true principals. This may be true as between Greenberg and the Catts Corporation, but it does not appear that plaintiff was a party to or had knowledge of such representations. Plaintiff was obliged to and did look first to Greenberg and then to whoever held the contracts under or through him, namely, the bankrupts and the trustees. Greenberg having transferred his contract with Catts Corporation, as well as plaintiff's contract, to the trustees, plaintiff could look only to the latter for performance. Greenberg could not thereafter perform, and it would have been idle for plaintiff to make a tender to him and demand performance. (*Strasbourger* v. *Leerburger*, 233 N. Y. 55, 60.) The bankruptcy of a party to an executory contract, such as we have before us, puts an end thereto, and is in the nature of an anticipatory breach. (*Central Trust Co.* v. *Chicago Auditorium Assn.*, 240 U. S. 581; *Roehm* v. *Horst*, 178 id. 1; *Conway* v *White*, 292 Fed. 837, 843.) While the trustees might have elected to assume the contract and proceed with performance, it is conceded that they did not do so. Although Catts Corporation may be in a position to claim that the contract was not made for or on behalf of Catts or the Merchants, etc., Exchange, hence their bankruptcy did not terminate the contract, plaintiff was not so situated and was bound to accept the bankrupts and their trustees as his contractual vendors, and his performance was measured by his duties to them under the then existing conditions. It is clear that plaintiff was never in default, hence none of the conditions under which the note was to be returned materialized. The fact that plaintiff conducted negotiations with Catts Corporation for the consummation of the agreements, and in those negotiations, refused to complete *all* the stipulated cash payments unless given possession of the leasehold, does not spell

out a breach of his contract with Greenberg. If anything his readiness to anticipate a substantial amount of his payments indicates his entire good faith.

We have to consider the alleged oral agreement between plaintiff and defendant to the effect that there would be no liability on the note if Greenberg defaulted under its contract with Catts Corporation or unless Catts Corporation became in default to Greenberg. In view of the large amounts involved, I can scarcely credit the claim that such an agreement would have been permitted by the attorneys in the case to rest on a mere oral statement. By this I do not mean that no conversation on the subject took place, but I am convinced that it was a preliminary statement of the clauses in the written agreements. Whether Mr. Kelsey acted on behalf of the Catts Corporation or of defendant in this discussion may be open to question, but inasmuch as the only written agreement containing any reference thereto (except the Greenberg-plaintiff agreement) is the Catts Corporation agreement, I believe that Mr. Kelsey was acting for the latter and that the conversation became merged in the last named contract and is not susceptible of oral proof varying the terms thereof.

It is rather apparent that plaintiff, in dealing with Greenberg, realized that both the latter and the parties behind him were irresponsible. Plaintiff did not care to make a large cash deposit unless assured of its return if the deal did not go through. He demanded the credit of some responsible party in the transaction, as he was not dealing directly with the owner. This he obtained in the form of defendant's note, delivered by the owner of the stock of the company holding the leasehold. The owner of the leasehold received the down payment. Through no fault of plaintiff's, the deal has fallen through. He cannot recover the down payment from the owner, as he did not contract with it, but the foresight of his advisers has placed him in a position as equally favorable as though he had contracted with a responsible owner. He is entitled to judgment in the sum of $100,000, with interest thereon from January 4, 1927, to the date of entry, to be computed by the clerk. In view of this disposition it is unnecessary to pass upon plaintiff's motions to strike out certain evidence received under his objection.

Thirty days' stay and sixty days to make a case.