## GEIGER v. FIRST–TROY NAT. BANK & TRUST CO. OF TROY, OHIO.

Circuit Court of Appeals, Sixth Circuit.
January 18, 1929.

No. 5056.

Wm. W. Keifer and Frank W. Geiger, both of Springfield, Ohio (Keifer & Keifer and Aaron J. Halloran, all of Springfield, Ohio, on the brief), for appellant.

Leonard H. Shipman, of Troy, Ohio, for appellee.

Before MOORMAN, HICKS, and KNAPPEN, Circuit Judges.

HICKS, Circuit Judge. A motion to dismiss the amended bill was sustained, and plaintiff appealed. The point of the motion is that the facts as stated in the amended bill are not sufficient to entitle the plaintiff to any relief. The matter must be determined upon a consideration of Equity Rule 25, clause 3, making a bill in equity sufficient which "contains a short and simple statement of the ultimate facts upon which the plaintiff asks relief," and that portion of Equity Rule 29 requiring that "every defense in point of law arising upon the face of the bill * * * for * * * insufficiency of fact to constitute a valid cause of action in equity * * * shall be made by motion to dismiss. * * * " The outstanding features of the amended bill and its exhibits are that the bill alleges that in April, 1921, the plaintiff was president of the Troy Wagon Works Company; that it was heavily indebted to various creditors; that plaintiff had indorsed and guaranteed the payment of its notes as follows: To Chatham & Phœnix National Bank of New York, $54,000; to First National Bank of Troy, Ohio, $22,750; to Troy National Bank of Troy, Ohio, $19,700—making a total of $96,500; that in addition plaintiff had loaned to the company Liberty bonds of the face value of $23,500, which had been deposited by the company as collateral security for a note of the company to the First National Bank of Troy in the sum of $19,800; that to protect plaintiff upon his indorsement and for the loan of his bonds and for his guaranty of other obligations of the company, it entered into a contract with plaintiff and the First National Bank as trustee on April 9, 1921, whereby it issued to plaintiff $99,000 of its first mortgage gold notes and deposited these notes for plaintiff's security with the First National Bank as trustee. A copy of said contract is made Exhibit A. Plaintiff further alleges that on June 1, 1921, he and the company and the three banks entered into another contract, a copy of which is filed as Exhibit B; that therein it was agreed that the company then owed the three banks a total of $170,343.86, but that upon said indebtedness plaintiff was liable as indorser or guarantor for only $96,500; that by the terms of said agreement, Exhibit B, plaintiff agreed to and did deposit with the First National Bank of Troy certain securities aggregating an approximate value of $60,000, and transferred and assigned certain other securities to said bank as trustee; that the company agreed to deposit $193,100 and did actually deposit $191,000 of its gold notes—these securities to be held by the First National Bank of Troy as collateral for the above-named loans of $170,345.86 as well as for additional loans up to $60,000, except that the securities deposited by plaintiff were to be held as collateral only for the $96,500 upon which plaintiff was indorser or guarantor—that by said agreement the First National Bank of Troy was not entitled to the benefit of any of the securities deposited under Exhibit B for the repayment of that certain loan by it to the company secured by the $23,500 par value of Liberty bonds which plaintiff had loaned to the company for this purpose, but that plaintiff, the owner of the bonds loaned to the company, should be entitled pro rata up to the sum of $23,500 to the benefit of the securities pledged by the company under Exhibit B; that in pursuance of said contract of June 1, 1921, plaintiff released the $99,000 in gold notes pledged to him under the agreement of April 9, 1921; that he confirmed his obligation as indorser upon the indebtedness due the banks amounting to $96,500; and that it was agreed that plaintiff should not be personally liable upon any further or additional loans made by the banks to the company. In so far as the bill undertakes to set out the contents of the alleged contracts Exhibits A and B, these exhibits are in accordance.

Plaintiff further alleges that on April 17, 1922, the company was adjudged a bankrupt; that its property was administered in bankruptcy; that provable claims were allowed in favor of the three banks in separate amounts totaling $97,208.37, principal and interest upon which plaintiff was indorser as stated in the contract of June 1, 1921, and that this amount, together with the $19,800 due the First National Bank of Troy and secured by plaintiff's Liberty bonds, was the total amount due said banks.

Plaintiff further avers that the assets of the company were sold in bankruptcy; that the sale resulted in a dividend of $20,055 which represented 10½ per cent. of the mortgage indebtedness of $191,000; and that, there being a first lien upon said dividend to secure said mortgage indebtedness, the same was, on or about May 10, 1923, paid by the referee to the First National Bank of Troy as trustee or to its successor, the defendant, the First-Troy National Bank & Trust Company, of Troy, Ohio, which had grown out of a consolidation and merger of the two Troy banks. Plaintiff further avers that he and said banks have each continuously con-

strued the contract of June 1, 1921, Exhibit B, as entitling plaintiff to share in the security of said $191,000 in gold notes in proportion to his claim for $23,500 on account of the loan of his Liberty bonds. Plaintiff avers said share to be $4,051.40, and that defendant as successor to the First National Bank of Troy, Ohio, trustee, has failed and refused to pay him any portion thereof. Plaintiff further avers that on May 5, 1925, for a valuable consideration all claims of said banks against him as maker, indorser, or guarantor of the notes described were released and discharged.

The bill prays that the defendant be required (1) to account for said sum of $20,-055; (2) to pay the plaintiff his proportion thereof; and (3) for other and further relief. [1-3] The motion to dismiss admits as true the facts alleged in the bill, and only the facts appearing in the face of the bill and its exhibits can be considered on the motion. Conway v. White, 292 F. 837, 840 (C. C. A. 2). And to authorize dismissal upon motion it must clearly appear from the facts alleged that the plaintiff's bill must be dismissed upon final hearing. Kansas v. Colorado, 185 U. S. 125, 145, 22 S. Ct. 552, 46 L. Ed. 838; Krouse v. Brevard Tannin Co., 249 F. 548 (C. C. A. 4); Conway v. White, supra. Further, if the bill upon its face presents a case for any relief, it will not be dismissed. Kansas v. Colorado, supra.

Considering these established rules, we are of the opinion that the allegations of the bill require an answer. On the motion to dismiss it must be taken as true that plaintiff was a creditor of the company in the sum of $23,500 and as such was under the contract, Exhibit B, clause 7, "entitled pro rata up to the sum of $23,500.00 to the benefit of securities hereunder pledged by the Company"; that these securities were converted into cash and delivered to defendant as trustee; and that, although all parties had from the making of the contract of June 1, 1921, construed the same to mean that plaintiff was entitled to share in said securities in proportion to his claim and had agreed to said construction, yet defendant had failed and refused to pay the plaintiff. These are the alleged or issuable facts upon which plaintiff asks relief, and their statement fairly complies with Equity Rule 25, clause 3. The point is made that the bill does not allege that plaintiff has not already had that to which he is entitled under clause 7 of Exhibit B, to wit, "the benefit of the securities." We do not regard such failure as fatal when tested by motion to dismiss. The case has a trust feature. Plaintiff as beneficiary is su-

ing defendant for an accounting. He has presented his theory upon which he seeks relief. Defendant had possession of the trust fund. What disposition, if any, defendant made of this fund, is peculiarly and of necessity within its own knowledge, and any allegation of plaintiff with reference thereto is not required. Story's Equity Pleading, § 255. If defendant has in any way lawfully appropriated plaintiff's share of this fund to his benefit, this is a matter of defense. Under the strict rules of ancient equity pleading, the plaintiff was required, in what was called the charging part of the bill, to set up and challenge matters of defense; but under the equity rules existing from 1842 to 1912, he was at liberty to omit the charging part of the bill at his option; while under the present rule 25 reference to the charging part of the bill is omitted altogether, and all that is required is a "short and simple statement of the ultimate facts upon which the plaintiff asks relief."

In Townsend v. Vanderwerker, 160 U. S. 185, 186, 16 S. Ct. 258, 263 (40 L. Ed. 388), it is said: "There are doubtless circumstances in the case which indicate at least a difficulty of proof, if not to arouse a suspicion, that perhaps the plaintiff may have overstated his case, but the pleader in a bill in equity is not bound to state either the testimony or facts which militate against his theory, but only to present his case in the light most favorable to his own interests, and asks that, upon such presentation, the court shall decide upon the sufficiency of his bill."

Viewed from another angle, the motion to dismiss must fail.

It must be taken as true that plaintiff is entitled, under clause 7 of Exhibit B, to benefit pro rata in the securities converted into cash and received by the defendant. Conceding that this provision of the contract, entitling plaintiff to the "benefit" of the securities pro rata up to $23,500, is too narrow to justify a decree for money payment, still the bill upon its face does at least justify the accounting sought in order that plaintiff may have his equity, if any he has, in the fund determined and established, and if he is entitled thereto, then, under the prayer of the bill, "for such other and further relief to which this plaintiff may be entitled," the court has ample authority to award a decree for money payment. Fechteler et al. v. Palm Bros. & Co., 133 F. 462, 465 (C. C. A. 6); London and San Francisco Bank v. Dexter, Horton & Co., 126 F. 593, 606 (C. C. A. 9).

For the reasons indicated, the decree is reversed and the case remanded for further proceedings in accordance herewith.