### GEIGER v. FIRST TROY NAT. BANK & TRUST CO. OF TROY, OHIO.

No. 6457.

Circuit Court of Appeals, Sixth Circuit.

Oct. 9, 1934.

W. W. Keifer and F. W. Geiger, both of Springfield, Ohio, for appellant.

R. H. French and Province M. Pogue, both of Cincinnati, Ohio (L. H. Shipman and Shipman & Shipman, all of Troy, Ohio, O. B. Brown, of Dayton, Ohio, and Pogue, Hoffheimer & Pogue, of Cincinnati, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Suit in equity by Charles A. Geiger against appellee for an accounting and for a decree for the sum of $4,051.40, his alleged share of $20,055, a dividend received by appellee as trustee from the sale in bankruptcy of $191,000 par value gold notes of the Troy Wagon Works Company. Geiger died while the suit was pending and it was revived in the name of appellant, the administrator of his estate. The facts as they are alleged are stated in a previous opinion. (C. C. A.) 30 F.(2d) 7.

The answer denied the right of Geiger to an accounting or to any part of the sum involved and pleaded that he was estopped from making the claim. Other defenses of appellee are immaterial.

The court dismissed the bill.

878

The record contains no statement of evidence and we must therefore accept the "Findings of Fact" filed by the court with its opinion.

The determinative facts are that appellee was formed in March, 1923, by the merger of the First National Bank of Troy and the Troy National Bank; that Geiger (herein called plaintiff) for a number of years prior to 1921 had been president of the Troy Wagon Works Company (herein called the Wagon Company); that the Wagon Company had become heavily involved in debt and that plaintiff had become an indorser, guarantor, or joint maker of certain of its notes, among others, to the following financial institutions:

The Chatham & Phœnix National Bank, $56,900.

The Troy National Bank of Troy, $22,500.

The First National Bank of Troy, $24,000.

The First National Bank of Troy, $19,800.

The note for $19,800 was secured by Liberty bonds of the face value of $23,500 which plaintiff had loaned to the Wagon Company for this purpose. On April 9, 1921, the Wagon Company agreed with plaintiff to deposit $99,000 of its par value first mortgage notes with the First National Bank of Troy to secure plaintiff upon his above listed liability to the banks. The bank accepted the trust. The financial condition of both plaintiff and the Wagon Company grew steadily worse and the banks demanded collateral not only to secure the Wagon Company's primary indebtedness to them, which then amounted to $170,345.86, but to secure the secondary obligations of plaintiff upon $96,500 thereof.

Accordingly upon June 1, 1921, the contract of April 9 was superseded by another between the three banks, the Wagon Company, and plaintiff, by which the $99,000 of gold notes pledged to plaintiff under the former agreement were released and added to other like notes of the Wagon Company aggregating $191,000 in all and placed with the First National Bank as depository to secure the Wagon Company's entire indebtedness to the banks. At the same time and by the same agreement plaintiff deposited with the First National Bank certain notes, stocks, and title papers of his own in an amount not to exceed $50,000, to secure his secondary liability above mentioned. But, because the $19,800 note held by the First National was already secured by the Liberty bonds (under the agreement), that bank was not entitled so far as this note was concerned to the benefit of the gold notes of $191,000 deposited under the contract. As additional security for his secondary indebtedness, liability for which he expressly confirmed, by the agreement of June 1, plaintiff assigned to the First National Bank, as his depository, his equity in the Liberty bonds. The Liberty bonds were sold to satisfy the note which they secured, and plaintiff's equity therein, amounting to about $3,700, was placed, in accordance with the agreement, with the other securities deposited by the plaintiff.

On April 17, 1922, the Wagon Company was adjudged a bankrupt and its property was thereafter administered by a trustee. The Troy National Bank, the First National Bank of Troy, and the Chatham & Phœnix National Bank, proved claims in the amounts of $20,077.29, $23,122.62, and $54,009.48, respectively, the total of which represented the amounts then due the banks exclusive of the $19,800 note secured by the Liberty bonds, and not proven. The First National Bank, as trustee, or depository under the contract of June 1, filed its claim under that contract by setting up the liabilities to the three banks, together with the $191,000 deposit of gold notes to secure them, and asked that the proceeds of the notes be paid to it as such trustee, "to be applied by it upon the obligations of said banks in proportion to the amounts due said banks from the said Wagon Works Company." A 10½ per cent. dividend amounting to $20,055 (the fund here involved) was paid thereon from the proceeds of these bonds in the following allotments:

To The First National Bank of Troy, $4,727.99.
The Troy National Bank of Troy, $4,104.52.
The Chatham & Phœnix National Bank of New York, $11,222.49.

These dividends were credited upon the notes due the banks upon which plaintiff was secondarily liable and proportionately reduced plaintiff's secondary liabilities. Plaintiff proved a number of claims in the bankruptcy court and among them one for $23,500, the face value of his Liberty bonds loaned to the Wagon Company, but he alleged no security therefor.

On account of his ownership of the Liberty bonds, plaintiff's insistence is that he is entitled to participate in the dividend of $20,-

055 pro rata with the banks; his share being $4,051.40 which should have been paid directly to him. His claim is based upon the wording of a portion of clause 7 of the contract of June 1, the clause dealing with the Liberty bonds put up by plaintiff to secure the loan of $19,800 by the First National Bank, to the Wagon Company. Anent this subject this sentence occurs: "The First National Bank of Troy is not entitled to the benefit of the securities deposited under the present agreement" (the $191,000.00 of gold notes) "for the repayment of said loan, *but it is agreed by all the parties hereto that said Geiger shall be entitled pro rata up to the sum of twenty-three thousand, five hundred ($23,500.00) dollars to the benefit of the securities hereunder pledged by the company.* * * *" (Italics ours.)

In another portion of the clause the plaintiff assigned his equity in the bonds to the First National Bank as depository to be added to the other securities pledged by him therein.

We cannot adopt plaintiff's view.

If the parties had intended that plaintiff's share in the dividend from the gold notes be paid directly to him, we think they failed to embody that understanding in the contract. The right to share in "the benefit of the securities hereunder pledged by the company" is not equivalent to the right to payment in cash. If we observe two cardinal rules of construction, (1) to look to the whole instrument and (2) to place ourselves in the position which the parties occupied, and view the matters spoken of in the contract as they saw them, it is not difficult to determine their intention. When the instrument was executed, both the Wagon Company and the plaintiff, its president, were in financial straits and desired to improve their credit standing with the banks and procure an extension of time for payment. The banks naturally wished to strengthen their security. To these ends the Wagon Company pledged its gold notes and plaintiff hypothecated his personal property and his equity in the already pledged Liberty bonds to secure his secondary obligations to the banks. Plaintiff had one other resource, i. e., his claim against the Wagon Company for the value of his Liberty bonds. It was worth something. Secured, it was worth more. The Wagon Company desired to secure it pro rata along with the claims of the banks by pledging its $191,000 of gold notes. The banks consented but upon one condition, that if the Wagon Company should be forced into bankruptcy (an event not difficult to foresee) plaintiff's share in the pledged notes be applied upon his secondary liability to them. This arrangement strengthened the credit of both plaintiff and the Wagon Company, giving them an opportunity to pay, and it was attractive to the banks because it strengthened plaintiff's securities which were otherwise insufficient.

Plaintiff's insistence would place the banks (whose business it was to loan money upon security) in the unnatural attitude of voluntarily relinquishing to him or his general creditors, security which was even then insufficient to cover his obligations to the banks. We are the better satisfied with our construction because thereby plaintiff suffers no substantial injustice. His assets are applied to his liabilities, and his general creditors do not complain.

We think that the same result would follow from other findings of fact, to wit: That about December 6, 1923, plaintiff brought suit in an Ohio state court against appellee as depository and also against the Chatham & Phoenix National Bank, the Troy National Bank, and the First National Bank of Troy; that his only complaint there was that the dividend from the pledged gold notes which had been paid to the banks had been wrongfully reduced by misconduct of the banks in the management and sale of the properties of the Wagon Company in the bankruptcy proceedings, and that he did not complain that these dividends had been misapplied; that in that case both by the answer of the defendant and the affidavits of its president and cashier plaintiff was fully advised that the dividend involved had been applied upon obligations upon which plaintiff was liable; that this litigation was disposed of by a settlement on May 5, 1925, between the plaintiff, the appellee (representing itself and its predecessors), the Chatham & Phoenix National Bank, and Fannie M. Geiger, plaintiff's wife, by the terms of which the banks canceled the balance due from plaintiff on the other notes, and paid plaintiff's wife $2,750 for her interest in the real property put up by plaintiff to secure the banks. The balance on plaintiff's obligations which the banks forgave, even after the application of all property deposited by plaintiff and the $20,055 dividend received from the gold notes, was in excess of $30,000, and for this they received no consideration except the settlement of all matters of difference.

This settlement appears to have been wholly voluntary and in good faith. By its

terms the plaintiff received a substantial benefit in the cancellation of his notes and we think that elementary principles of equitable estoppel preclude him from demanding now another accounting for a share of the dividend involved. Equity will hold him to an acquiescence in and approval of appellee's application of the fund.

The decree of the District Court is affirmed.